# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARCHIE TINDELL, | ) | |
| Plaintiff | ) | C.A. No. 13-182 Erie |
| | ) | |
| v | ) | Chief Judge Conti |
| | ) | Magistrate Judge Baxter |
| JOHN WETZEL, et al., | ) | |
| Defendants | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

It is respectfully recommended that:

    1.    The DOC Defendants' motion to dismiss [ECF No. 13], herein treated, in part, as a motion for summary judgment, be granted in part and denied in part; and

    2.    The Medical Defendants' motion to dismiss [ECF No. 28], herein treated as a motion for summary judgment, be granted.

### II.   REPORT

#### A.   Relevant Procedural History

Plaintiff, an inmate incarcerated at the State Correctional Institution at Forest in

Marienville, Pennsylvania ("SCI-Forest"), initiated this civil rights action on April 29, 2013, by

filing a *pro se* complaint, pursuant to 42 U.S.C. § 1983, in the Court of Common Pleas of Forest

County, Pennsylvania. The action was removed to this Court by Notice of Removal filed on June

24, 2013 [ECF No. 1]. Named as Defendants in Plaintiff's *pro* se complaint are: John Wetzel

("Wetzel"), Secretary of the Pennsylvania Department of Corrections ("DOC"); James Barnagle

("Barnagle"), Director of the DOC's Office of Special Security Investigation; Daniel Burns ("Supt. Burns"), Superintendent at SCI-Forest; Eric Tice ("Tice"), Deputy Superintendent at SCI-Forest; RHU Shift Commanders Major Repko ("Repko"), Capt. Hatchel ("Hatchel"), Capt. Smith ("Smith"), and Capt. Ireland ("Ireland"); RHU Officers Lt. Carter ("Carter"), Lt. Stetnek ("Stetnek"), and Sgt. Lyken ("Lyken"); Corrections Officers Klawuhn ("C/O Klawuhn"), Best ("C/O Best"), and Dickey ("C/O Dickey"); Kim Smith (K.Smith"), Health Care Administrator at SCI-Forest; Nancy McGarvie (improperly designed as "McGarvey") ("McGarvie"), Medical Director at SCI-Forest; Eileen Summers ("LPN Summers") and Laurie Cornell (improperly designated as "Conrad") ("LPN Cornell"), Licensed Practical Nurses at SCI-Forest; Rhonda Sherbine ("Sherbine"), Physician Assistant at SCI-Forest; and Beverly O'Rourke ("O'Rourke"), Certified Registered Nurse Practitioner at SCI-Forest. Defendants McGarvie, Sherbine, and O'Rourke will hereafter be collectively referred to as "Medical Defendants," while the remaining Defendants will be collectively referred to as "DOC Defendants."

In his *pro se* complaint, Plaintiff claims that Defendants retaliated against him for exercising his constitutional rights, and were deliberately indifferent to his safety and his serious medical needs in violation of the Eighth and Fourteenth Amendments. As relief for his claims, Plaintiff seeks injunctive relief and monetary damages.

On August 1, 2013, the DOC Defendants filed a motion to dismiss [ECF No. 13], arguing that Plaintiff's claims against them should be dismissed in their entirety because they fail to state claims upon which relief may be granted. On October 3, 2013, the Medical Defendants filed their own motion to dismiss [ECF No. 28], also arguing that Plaintiff's claims against them should be

dismissed because they fail to state claims upon which relief may be granted. Attached to the brief in support of the Medical Defendants' motion are copies of Plaintiff's medical records for this Court's review and consideration [ECF No. 29-1 – 29-3]. As a result, the Court issued an Order notifying Plaintiff that Defendants' motions may be treated as motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, thereby instructing Plaintiff to file with his response any opposing documentary evidence he would like the Court to consider. [ECF No. 30]. To date, however, Plaintiff has not filed any response or documents in opposition to either motion. This matter is now ripe for consideration.


   **B.**     **Relevant Factual History**

   On September 9, 2012, Plaintiff filed a notice with the Pennsylvania Board of Probation and Parole regarding a civil action he intended to file for violation of his due process rights, which included claims against his counselor, Lisa Best, and his unit manager, Ms. Ireland. (ECF No. 1-1, Complaint, at ¶ 16). Allegedly as a result of this notice, Lisa Best's husband, C/O Best, along with C/O/ Klawuhn, began harassing Plaintiff by banging on his cell door and making verbal threats on various occasions, beginning on November 4, 2012. (Id. at ¶¶ 18-19, 30-31, 37, 39).

   On November 19 and 21, 2012, C/O Klawuhn and LPN Summers allegedly denied Plaintiff his medications due to his filing of grievances and civil actions. (Id. at ¶¶ 23-27). Plaintiff alleges that he sent numerous request slips to Supt. Burns and letters to Wetzel regarding the conduct of C/O/ Best and C/O Klawuhn, but no action was taken against them. (Id.

at ¶ 29).

On January 4 and 10, 2013, C/O Dickey allegedly made racially derogatory remarks and verbal threats to Plaintiff while serving food trays. (Id. at ¶¶ 33-34). On or about January 10, 2013, Carter allegedly denied Plaintiff an interview in connection with a grievance and, instead, stated that Plaintiff refused the interview. (Id. at ¶ 35). On January 14, 2013, Smith allegedly refused Plaintiff's request to call the abuse hotline to report the conduct of RHU staff. (Id. at ¶ 36). On February 5, 2013, LPN Summers allegedly refused to submit Plaintiff's sick call slip and delayed medical attention for Plaintiff's chest pain and respiratory problems, due to Plaintiff's filing of a grievance against her. (Id. at ¶ 40).

On March 3, 2013, while Plaintiff was retrieving his medication from LPN Summers, C/O Klawuhn allegedly slammed Plaintiff's finger inside the "pie-slot." Plaintiff notified Lyken of the injury to his finger and asked him to call medical. (Id. at ¶ 42). The next day, Lyken asked Plaintiff if he had seen someone from the medical department and Plaintiff responded that he hadn't and again requested to see medical. Lyken stated that he passed Plaintiff's request on to Stetnek (Id. at ¶ 43).

On March 15, 2013, Plaintiff was seen on sick call by O'Rourke, who looked at Plaintiff's injury and ordered x-rays. (Id. at ¶ 46). On April 5, 2013, Carter conducted an investigation of Plaintiff's injury in response to Plaintiff's request slip to Supt. Burns and his letter to the DOC's Central Office. (Id. at ¶ 48). According to Plaintiff, Carter wrongfully reported that Lyken was responsible for causing Plaintiff's injury, and allegedly refused to take pictures of Plaintiff's finger. (Id. at ¶ 49). On April 10, 2013, Supt. Burns went to Plaintiff's cell,

at which time Plaintiff showed Burns his injury and told him that Carter refused to take pictures as part of his investigation. According to Plaintiff, Hatchel stated that he would take the photographs, but never did. (Id. at ¶ 50).

Sometime after April 10, 2013, Sherbine allegedly went to Plaintiff's cell to tell him that K. Smith and McGarvie would not file a medical report regarding his injury because of his constant submission of sick call slips. Sherbine also allegedly refused to refer Plaintiff to a doctor and, instead, referred him to a psychiatrist for an evaluation, allegedly in retaliation for his filing of sick call slips. (Id. at ¶¶ 51-53).

### C.    Standards of Review

#### 1.    Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp.,

394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906

(3d Cir. 1997).  Nor must the court accept legal conclusions set forth as factual allegations.

Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S.  265, 286 (1986).  "Factual

allegations must be enough to raise a right to relief above the speculative level." Twombly, 550

U.S. at 555.  Although the United States Supreme Court does "not require heightened fact

pleading of specifics, [the Court does require] enough facts to state a claim to relief that is

plausible on its face." Id. at 570.

     In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing'

rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469,

at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d

Cir. 2008).  "This 'does not impose a probability requirement at the pleading stage,' but instead

'simply calls for enough facts to raise a reasonable expectation that discovery will reveal

evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at

556.

     Recently, the Third Circuit Court prescribed the following three-step approach to

determine the sufficiency of a complaint under Twombly and Iqbal:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to
> state a claim.'  Second, the court should identify allegations that, 'because
> they are no more than conclusions, are not entitled to the assumption of
> truth.'  Finally, 'where there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they plausibly
> give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011), citing Santiago v. Warminster

Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S.Ct. at 1947, 1950); see also Great

6

Western Mining & Min. Co. v. Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010).


### 2. Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a

properly presented motion for summary judgment). The non-moving party must go beyond the

pleadings and show specific facts by affidavit or by information contained in the filed documents

(i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving

elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260

F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare

assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia

v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409

F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh

the evidence or to make credibility determinations, but is limited to deciding whether there are

any disputed issues and, if there are, whether they are both genuine and material. Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all

reasonable inferences which may be drawn from it, in the light most favorable to the non-moving

party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El

v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under

applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute

about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return

a verdict for the non-moving party. Id. at 247-249.

"Where the party opposing a motion for summary judgment bears the ultimate burden of

proof, the moving party may discharge its initial burden of showing that there is no genuine issue

of material fact 'by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" Player v. Motiva Enterprises, LLC, 240 Fed.Appx 513, 522 n4 (3d Cir. 2007) quoting UPMC Health Sys. v. Metro. Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). If the moving party has satisfied its initial burden, the nonmoving party must, in their opposition to the motion, identify evidence of record that creates a genuine issue of material fact. Childers v. Joseph, 842 F.2d 689, 694-95 (3d Cir. 1988).

### 3.     *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is

appropriate.

### D.   Discussion

#### 1.   Personal Involvement of Supervisory Defendants

The DOC Defendants argue that Plaintiff's claims must be dismissed against the

following supervisory Defendants due to their lack of personal involvement in the alleged

misconduct: Wetzel, Barnagle, Supt. Burns, Tice, Repko, Hatchel, Smith, Ireland, Carter,

Stetnek, and Lyken. For the same reason, the Medical Defendants argue that Plaintiff's claims

against McGarvie should be dismissed.

When a supervisory official is sued in a civil rights action, liability can only be imposed if

that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton,

805 F.2d 126, 133 (3d Cir. 1986).   Although a supervisor cannot encourage constitutional

violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so

as to prevent such conduct."  Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir.

1990), cert. denied, 501 U.S. 1218 (1991).  The supervisor must be personally involved in the

alleged misconduct.  Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988).  Section 1983

liability cannot be predicated solely on *respondeat superior*.  Rizzo v. Goode, 423 U.S. 362

(1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line

officers who act in violation of constitutional rights may not be held liable on a theory of

vicarious liability merely because the superior had a right to control the line officer's action);

Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief

liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations). If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official.  Rode, 845 F.2d at 1208; Cooper v. Beard, 2006 WL 3208783 at * 14 (E.D.Pa. Nov. 2, 2006).

Here, the only substantive allegations Plaintiff makes against Defendants Wetzel, Barnagle, Supt. Burns, Tice, Repko, and Ireland, are that they were made aware, or became aware, of the complained-of misconduct against Plaintiff, but did nothing in response. These allegations fail to establish affirmative participation in the complained-of misconduct. As a result, Plaintiff's claims against these Defendants should be dismissed.

As to the other supervisory Defendants, Hatchel is alleged to have failed to take pictures of Plaintiff's finger injury (ECF No. 1-1, Complaint, at ¶ 50); Smith is alleged to have denied Plaintiff a phone call and a new pair of underwear (Id. at ¶¶ 36, 41); Carter is alleged to have refused to interview Plaintiff regarding a grievance and refused to take pictures of his injured finger (Id. at ¶¶ 35, 49-50); Stetnek and Lyken are alleged to have failed to call medical in response to Plaintiff's sick call requests (Id. at ¶ 43); and McGarvie is alleged to have told Sherbine that she would not file a medical report for Plaintiff (Id. at ¶ 51). These allegations fail to establish that any of the supervisory Defendants played an affirmative part in violating Plaintiff's constitutional rights. As a result, Plaintiff's claims against Defendants Hatchel, Smith,

11

Carter, Stetnek, Lyken, and McGarvie should be dismissed.

In a similar vein, Plaintiff has failed to make any allegations whatsoever against LPN
Cornell and she should, therefore, be dismissed from this case for Plaintiff's failure to state any
claim against her for which relief may be granted.


### 2.    Deliberate Indifference

Plaintiff alleges that the Medical Defendants were deliberately indifferent to his serious medical
needs by allegedly denying or delaying treatment for his chest pains and respiratory condition, and for his
finger that was injured when C/O Klawuhn closed it in the pie slot of his cell door.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when
prison officials are deliberately indifferent to an inmate's serious medical needs.
Estelle v. Gamble, 429 U.S. 97 (1976).  "In order to establish a violation of [the] constitutional right to
adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by
prison officials that indicate deliberate indifference to that need."  Rouse v. Plantier, 182 F.3d 192, 197
(3d Cir. 1999).

Deliberate indifference to a serious medical need[1] involves the "unnecessary and wanton infliction
of pain." Estelle, 429 U.S at 104.  Such indifference is manifested by an intentional refusal to provide
care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial
of reasonable requests for treatment that results in suffering or risk of injury,  Durmer v. O'Carroll, 991
F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent

---

[1]

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a
lay person would easily recognize the necessity for a doctor's attention."  Monmouth County Correction Institute Inmates v.
Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979), quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977). Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").

Here, the Medical Defendants have submitted Plaintiff's medical records, which indicate that he was seen regularly by medical staff at SCI-Forest during the relevant period of time referenced in his complaint – from August 2012 through April 2013 – yet was generally uncooperative, frequently refusing blood and lab work, medications and/or x-rays. (ECF No. 29-1). In response to Plaintiff's complaints of chest pain and respiratory issues, the records reveal that he was seen by Sherbine on at least twelve occasions from January 2013 through April 2013, (Id. at 17-55). During this time, Plaintiff received chest x-rays, an echocardiogram, and pulmonary function testing, all of which revealed negative findings. With regard to his finger injury, Plaintiff was seen by O'Rourke on March 13, 2013, approximately one or two days after the injury occurred (Id. at 31). At that time, O'Rourke ordered x-rays of the finger, noting evidence of "slight edema" with limited range of motion and flexion. (Id. at 31-32). Plaintiff was later seen by Sherbine on March 19, 2013, who noted a superficial abrasion, but no edema of Plaintiff's hand. Sherbine also reported that x-rays of Plaintiff's finger revealed soft tissue

13

swelling with no fracture or dislocation. (Id. at 37-40). On March 28, 2013, Plaintiff's hand and finger were examined by Sherbine, who noted that the finger injury was healed, as Plaintiff demonstrated full range of motion, extension and flexion. (Id. at 44).

Based on the medical record, the Court cannot find that any of the Medical Defendants were deliberately indifferent to Plaintiff's serious medical needs. Although Plaintiff's allegations make clear that he is dissatisfied with the medical treatment he has received at SCI-Forest and apparently believes that a different course of treatment may have been more appropriate and beneficial, "mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation. White, 897 F.2d at 110. As a result, summary judgment should be granted in favor of the Medical Defendants and against Plaintiff on Plaintiff's Eighth Amendment deliberate indifference claim against them.

### 3. Verbal Harassment

Although Plaintiff has not specified a separate cause of action against C/O Best, C/O Klawuhn, and C/O Dickey for verbal harassment and threats, one may be gleaned from his repeated allegations of the same. Nonetheless, it is well-settled that the use of words, no matter how violent, is not actionable under 42 U.S.C. § 1983. See Gannaway v. Berks County Prison, 439 Fed.Appx. 86 (3d Cir. 2011) (a claim of verbal harassment does not constitute an Eighth Amendment violation); Wright v. O'Hara, 2004 WL 1793018 at *7 (E.D.Pa. Aug. 11, 2004) ("[w]here plaintiff has not been physically assaulted, defendant's words and gestures alone are not of constitutional merit")(citations omitted); MacLean v. Secor, 876 F.Supp. 695, 698-99 (E.D.Pa. 1995) ("[i]t is well-established that verbal harassment or threats ... will not, without some reinforcing act accompanying them, state a constitutional claim"); Murray v. Woodburn,

809, F.Supp. 383, 384 (E.D.Pa. 1993) ("Mean harassment ... is insufficient to state a constitutional deprivation") (listing cases). Thus, to the extent Plaintiff attempts to state Eighth Amendment claims against C/O/ Best, C/O Klawuhn, and C/O Dickey, arising from their alleged verbal harassment and threats, such claims should be dismissed.

### 4. Retaliation

Plaintiff has stated a general claim of retaliation attached to the various actions of the DOC and Medical Defendants. Both sets of Defendants have moved for dismissal of this claim based upon Plaintiff's failure to allege that he suffered an adverse action.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a prima facie case of retaliation, a prisoner must demonstrate:

     1) the conduct in which he was engaged was constitutionally protected;

     2) he suffered "adverse action" at the hands of prison officials[2]; and

---

[2]

To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225. See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory

15

> 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Following the satisfaction of a prima facie case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities.  Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.  In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

Here, Plaintiff cites a number of "adverse actions" that were allegedly taken against him in retaliation for his filing of grievances and complaints. First, Plaintiff cites the verbal threats and harassment that were allegedly directed towards him by C/O Best, C/O Klawuhn, and C/O Dickey. It is fairly well-settled, however, that verbal threats and harassment are not sufficient to constitute adverse action for purposes of stating a retaliation claim. Walker v. Campbell, 2011 WL 6153104, at *5 (W.D.Pa. Oct. 31, 2011), citing Burgos v. Canino, 358 Fed. Appx. 302, 306

---

conduct itself.").

(3d Cir. 2009); <u>Bartelli v. Lewis</u>, 2005 WL 2406048, at *2 (M.D.Pa. Sept. 29, 2005) ("we determine that verbal threats d not constitute an 'adverse action' and, therefore, do not fulfill a requisite element of a retaliation claim"). Thus, Plaintiff's retaliation claims against C/O Best, C/O Klawuhn, and C/O Dickey arising from their alleged verbal threats and harassment should be dismissed.

Second, although it is not entirely clear, Plaintiff apparently alleges that C/O Klawuhn retaliated against him for filing grievances and complaints by intentionally slamming his index finger in the pie slot of his cell door. To the extent Plaintiff makes a claim of retaliation against C/O Klawuhn arising from this incident, the Court finds that C/O Klawuhn's alleged conduct in this regard rises to the level of adverse action. Since Plaintiff has sufficiently alleged that he engaged in the constitutionally-protected conduct of filing grievances and complaints, which were filed in close proximity to the date on which his finger was slammed in the pie slot, the Court finds that Plaintiff has sufficiently stated a *prima facie* claim of retaliation against C/O Klawuhn regarding the finger slamming incident. Accordingly, this claim should be allowed to survive the DOC Defendants' motion to dismiss.

Third, Plaintiff alleges that C/O Klawuhn and LPN Summers refused his medications on November 19 and 21, 2012, due to his filing of a grievance and civil action against them. What is unclear from these allegations is the type of medication Plaintiff claims he was denied, and the adverse effects he may have experienced as a result. A review of Plaintiff's medical record makes clear that Plaintiff was generally due to receive three items when medications were distributed: Lubriskin lotion, a daily vitamin, and a generic form of Zantac. The failure to

receive any of these medications for one or two days is hardly a serious deprivation that would

deter a person of ordinary firmness from exercising his constitutional rights. Moreover,

Plaintiff's medical records reveal that Plaintiff did not receive these medications for a number of

days before and after November 19 and 21, 2012, due to his non-compliance with prison

protocol. (ECF No. 29-3 at 3-7). Specifically, Plaintiff was refused his medications from

November 10 through November 14, 2012, and from December 4 through December 17, 2012.

(Id.). Thus, even if the refusal of medications on November 19 and 21 could be deemed an

adverse action, there is no causal connection between such refusal and Plaintiff's filing of a

grievance and civil action against LPN Summers, especially considering Plaintiff's medications

were denied by four other medical staff members, both before and after the dates LPN Summers

did so. Finally, even if Plaintiff could be found to have stated a *prima facie* case of retaliation

against LPN Summers related to the denial of medications, the medical record evidences a

legitimate penological reason supporting the denial, i.e. Plaintiff's refusal to comply with prison

procedures. For these reasons, the DOC Defendants should be granted summary judgment with

regard to Plaintiff's retaliation claim against LPN Summers.

Lastly, Plaintiff alleges that the Medical Defendants retaliated against him for filing

grievances and complaints by being deliberately indifferent to his serious medical needs. The

Court has already determined, however, that the Medical Defendants were not deliberately

indifferent. Thus, Plaintiff's claim of adverse action in this regard is unfounded and summary

judgment should be entered in favor of the Medical Defendants with regard to Plaintiff's

retaliation claim against them.

**5.** **Excessive Use of Force**

Although not separately identified as a cause of action, Plaintiff has nonetheless alleged

that C/O Kluwahn's act of slamming Plaintiff's finger in the pie slot of his cell door was

deliberate and was intended to cause "serious bodily harm." (ECF No. 1-1, Complaint, at ¶¶ 42,

48). This is sufficient to state a cause of action against C/O Klawuhn for excessive use of force in

violation of Plaintiff's Eighth Amendment rights. The DOC Defendants have not moved to

dismiss this claim, yet have acknowledged that such claim may exist and would survive a motion

to dismiss in any event. Thus, this claim should be allowed to proceed beyond the pleading stage.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that:

1.   The DOC Defendants' motion to dismiss [ECF No. 13], herein
     treated, in part, as a motion for summary judgment, be granted in
     part and denied in part, as follows:

     a.   The motion to dismiss Plaintiff's claims against
          Defendants Wetzel, Barnagle, Supt. Burns, Tice,
          Repko, Hatchel, Smith, Ireland, Carter, Stetnek, Lyken,
          and LPN Cornell, based upon their lack of personal
          involvement, should be GRANTED;

     b.   The motion to dismiss Plaintiff's Eighth Amendment
          claims, if any, against C/O Best, C/O Klawuhn, and C/O
          Dickey arising from their alleged verbal harassment and
          threats, should be GRANTED;

     c.   The motion to dismiss Plaintiff's retaliation claims against
          C/O Best, C/O Klawuhn, and C/O Dickey arising from
          their alleged verbal harassment and threats, should be
          GRANTED;

    d.      Summary judgment should be GRANTED in favor of C/O Klawuhn and LPN Summers and against Plaintiff as to Plaintiff's retaliation claim arising from the alleged denial of medications on November 19 and 21, 2012;

    e.      The motion to dismiss Plaintiff's retaliation claim against C/O Klawuhn arising from his act of slamming Plaintiff's finger in the pie slot of his cell door should be DENIED; and

    f.      Plaintiff's Eighth Amendment claim of excessive use of force against C/O Klawuhn should be allowed to proceed beyond the pleading stage.

2.      The Medical Defendants' motion to dismiss [ECF No. 28], herein treated as a motion for summary judgment, be GRANTED.

By virtue of the foregoing, all Defendants other than C/O Klawuhn should be terminated from this case.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto.  Failure to file objections will waive the right to appeal.  Brightwell v. Lehman, 637 F. 3d 187, 193 n. 7 (3d Cir. 2011).

        /s/ Susan Paradise Baxter
        SUSAN PARADISE BAXTER
        United States Magistrate Judge

Dated: June 30, 2014

cc:    The Honorable Joy Flowers Conti
       Chief United States District Judge